Sealed
Public and unofficial staff access to this instrument are prohibited by court order

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

United States Courts
Southern District of Texas
FILED

*March 06, 2023*

Nathan Ochsner, Clerk of Court

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
A Rolls Royce Dawn vehicle, model year 2018, VIN )    Case No. **4:23-mj-417**
SCA666D50JU107584. )
)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the    Southern    District of

   Texas    is subject to forfeiture to the United States of America under    18    U.S.C. §

981(a)(1)(A), *(describe the property)*:
981 (a)(1)(C), and 18 U.S.C. § 984

A Rolls Royce Dawn vehicle, model year 2018, VIN SCA666D50JU107584.

The application is based on these facts:

See attached affidavit setting out the factual basis for probable cause to believe that the money sought to be seized is subject to forfeiture as property which constitutes or is derived from proceeds traceable to wire fraud, securities fraud, and/or money laundering.

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Steven D. Dillon, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the
requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____ March 06, 2023

_____
*Judge's signature*

City and state: Houston, Texas

Hon. Dena H. Palermo, United States Magistrate Judge
*Printed name and title*

Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEIZURE WARRANTS

I, Special Agent Steven Dillon, being duly sworn, state as follows:

### I.      BACKGROUND OF AFFIANT

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been employed since 2004.  Since July 2013, I have been assigned to a Financial Crimes Squad in the FBI's Houston Division. I have received training relevant to the violation addressed by the FBI. I have personally investigated or assisted in investigating, criminal matters involving fraud, money laundering and related matters. My current duties include the investigation of financial crimes including bank fraud, wire fraud, mail fraud, as well as other financial crimes. I am authorized under Title 28, United States Code, Section 533, to conduct federal criminal investigations concerning any of the laws of the United States. Further, Title 18, United States Code, Section 3052 specifically authorized special agents and officials of the FBI to make arrest, carry firearms and serve warrants.

2.      The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

### II.      BASIS AND PURPOSE OF AFFIDAVIT

3.      This Affidavit is presented in support of seizure warrants to seize criminal proceeds (or property traceable to those proceeds) of violations of Title 18, United States Code, Sections 371, 1343, 1348 and 2, and 1349 received by Edward Constantinescu aka Constantin ("CONSTANTIN"), and associates from in or around January 2020 to in or around April 2022, estimated to be approximately $114 million in the aggregate, and property traceable to those

proceeds and/or involved in money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957, and therefore subject to forfeiture to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C).

## III.    PROPERTY SUBJECT TO SEIZURE

4.     This Affidavit is made in support of an application to seize the funds on deposit listed in the following accounts (collectively, the "TARGET ACCOUNTS 1 through 6"):

| | ACCOUNT HOLDER | FINANCIAL INSTITUTION | ACCOUNT NO. | AMOUNT TO BE SEIZED |
|---|---|---|---|---|
| 1 | Edward Constantin/ B. A. | Capital One Bank | 156407878 | All funds on deposit |
| 2 | Edward Constantin | Webull Financial LLC | 5WA-85933-12 | All funds on deposit |
| 3 | Edward Constantin/ B. A. | Capital One Bank | 36097197619 | All funds on deposit |
| 4 | Edward Constantin/ B.A. | Capital One Bank | 36097420906 | All funds on deposit |
| 5 | Edward Constantin/ B.A. | Capital One Bank | 148840809 | All funds on deposit |
| 6 | Edward Constantinescu | JP Morgan Chase | 8705699420 | All funds on deposit |

5.     This Affidavit is also made in support of an application to seize the following vehicles (collectively, the "TARGET VEHICLES 1 through 3"):

| | VEHICLE | VIN # | REGISTERED OWNER |
|---|---|---|---|
| 1 | 2020 Mercedes-Benz G63 | W1NYC7HJ6LX363844 | Edward Constantinescu |
| 2 | 2021 Lamborghini Urus | ZPBUA1ZL5MLA13745 | Edward Constantinescu |
| 3 | 2018 Rolls Royce Dawn | SCA666D50JU107584 | Edward Constantinescu |

## IV.    RELEVANT STATUTES

6.     Title 18, United States Code, Section 981(a)(1)(A) provides for the civil forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 (money laundering), 1957 (spending statute) … of this title, or any property traceable to such property."

7.     Title 18, United States Code, Section 1956 (a)(1)(A)(i) states: "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity" is guilty of a violation of 18 U.S.C. § 1956(a)(1)(A)(i).

8.     Title 18, United States Code, Section 1956 (a)(1)(B)(i) states: "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" is guilty of a violation of 18 U.S.C. § 1956(a)(1)(A)(i).

9.     Title 18, United States Code, Section 1957 states: "Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)."

10.     Title 18, United States Code, Section 981(a)(1)(C) provides for the civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."  Violations of 18 U.S.C. §§ 1343 (wire fraud) and 1348 (securities fraud) constitutes a "specified unlawful activity" under 18 U.S.C. § 1956(c)(7)(A), which incorporates 18 U.S.C. § 1961(1)(D).

11.     With regard to the civil forfeiture of fungible property, Title 18, United States Code, Section 984 provides that funds deposited in an account in a financial institution that are found

in the same account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture so long as the action is commenced within one year from the date of the offense. This section, when it applies, excuses the government from tracing the proceeds into the account and showing that the funds are still on deposit. In other words, hypothetically, if the government can show that $100,000 in fraud proceeds were deposited into Account x1234 within the last twelve months, then the government may seize and civilly forfeit an equivalent amount of $100,000 in funds from Account x1234, even if it is not exactly the same money that was deposited.

## V. BACKGROUND

12. Based on a law enforcement investigation there is probable cause to believe that, from January 2020 through April 2022, CONSTANTIN and others engaged in a scheme to "pump and dump" securities based on false and misleading information and material omissions about those securities that the defendants published on social media platforms, including Twitter, Inc. and Discord, Inc. To carry out the scheme, the defendants (1) purchased shares of a security in their trading accounts; (2) posted messages on social media platforms with false, positive information about the security—including as to, among other things, the defendants' position in the security, how long the defendants intended to hold the security, the defendants' view that the security would increase in price, and the price the security could reach—to induce other investors to buy the security and artificially drive up its price, and (3) secretly sold their own shares of the security at a higher price to secure a profit for themselves, at or around the time they posted messages to induce other investors to purchase the same security and concealed their intent to sell. From in or around January 2020 to in or around April 2022, the defendants profited at least approximately $114 million from their scheme.

13.     CONSTANTIN, who resided in the Southern District of Texas in or around the relevant period, used the Twitter account "@MrZackMorris" and had over 500,000 followers on Twitter.    CONSTANTIN also used the Discord account "Zack Morris#0001." CONSTANTIN co-founded Atlas Trading, which purported to be a stock trading community, and encouraged investors to join Atlas Trading's free chatroom or server on Discord purportedly to learn how to trade securities and receive "alerts" or messages from CONSTANTIN and others about securities. Over time, Atlas Trading Discord grew to become one of the largest stock-trading chat rooms, with over 250,000 members. CONSTANTIN posted alerts in Atlas Trading Discord and Twitter about the securities that he and the other defendants traded as part of the pump and dump scheme.

14.     CONSTANTIN and the other defendants conducted coordinated efforts to mislead and conceal material information from other investors concerning their true trading activity that was critical to the continued success of the scheme.  The defendants used their credibility to maximize their own trading profits through their tweets and posts in Atlas Trading Discord, often at the expense of their Twitter followers and members of Atlas Trading Discord. Indeed, the defendants used their social media influence to pump and dump securities for their own financial gain.

15.     To do so, one or more of the defendants first purchased a security, often notifying other defendants of the purchase so that they, too, could "load" and buy the security. After purchasing or "loading" the security, one or more of the defendants sought to "pump" the price of that security by posting false and misleading information, about the security on Twitter and Atlas Trading Discord so that other investors were induced to purchase the security and artificially increase its price.  CONSTANTIN and the other defendants "pumped" the price of securities by posting on Twitter and Atlas Trading Discord the following types of false and

misleading messages, among others: representing that a defendant intended to hold the security for a longer trading term, as opposed to a short-term trade or day trade; or that the defendant "joined" another defendant in purchasing the security or was "adding" to a position in the security; or claiming a purported price target for the security that was significantly higher than the price at which the security was trading, and that was higher than the defendants actually valued the security; and messages concerning "due diligence" about the security and purported catalysts that would increase the security's price over time.

16.     These messages were false and misleading, and omitted material information because CONSTANTIN and the other defendants concealed their intent to use these messages to induce other investors to purchase the securities so that defendants could sell their shares at a higher price at and around the time of the messages. Indeed, because the defendants recognized that their followers on Twitter and members of Atlas Trading Discord frequently purchased securities based on the defendants' social media posts, the defendants sought to conceal from, and further mislead, their Twitter followers and members of Atlas Trading Discord about the defendants' true trading positions and intentions. In this way, the defendants used social media to induce other investors to purchase and hold the same securities that the defendants were selling or dumping so that the defendants could maximize their own profits. On or about February 20, 2022, CONSTANTIN falsely claimed in a tweet, "I never dump on my followers …."

17.     The information regarding the underlying scheme to defraud and other criminal conduct is more fully described in the Indictment of CONSTANTIN, and seven others on December 7, 2022, in the Southern District of Texas, Houston, TX, included as Attachment A and the Superseding Indictment dated February 8, 2023, included as Attachment B, both incorporated herein by reference.  In short, the investigation described in Attachment A and

Attachment B, and the financial analysis described in this Affidavit, give probable cause to believe that the business operations of CONSTANTIN and associates were permeated by fraud.

## VI.    FINANCIAL INVESTIGATION

18.    Between in or around January 2020, through in or around April 2022, CONSTANTIN profited in excess of $79 million in identified fraudulent funds ("fraud proceeds") based on the illegal investment scheme.  Since CONSTANTIN maintained individual investments accounts the fraud proceeds were accumulated in his respective investment accounts and subsequently transferred to other financial accounts which CONSTANTIN used to purchase real properties and luxury vehicles.

19.    CONSTANTIN conducted a large volume of his illegal securities trading activity in TD-Ameritrade account 865-819349 (CONSTANTIN INVESTMENT) and TARGET ACCOUNT 2.  CONSTANTIN subsequently sent a large amount of the illicit funds to his TARGET ACCOUNT 1 and subsequently to TARGET ACCOUNT 6.

20.    Based upon my training and experience, I know that conducting financial transactions with fraud proceeds in order to promote the underlying fraud scheme is a violation of Title 18, United States Code, Section 1956(a)(1)(A)(i). Furthermore, I know that any financial transactions that involved greater than $10,000 in fraud proceeds also constitute violations of the money laundering "spending statute," codified at Title 18, United States Code, Section 1957.

21.    As indicated above, an analysis of the securities trading records for CONSTANTIN revealed that CONSTANTIN profited more than $79 million in identified fraud funds based on his illegal investment scheme. The following chart details by month (event end date) from January 2020 through August 2022 the amounts of the identified fraud proceeds attributed to

CONSTANTIN:

| YEAR | 2020 | 2021 | 2022 |
|---|---|---|---|
| JANUARY | $8,550.00 | $15,634,390.00 | $0.00 |
| FEBRUARY | $13,400.00 | $22,564,770.00 | $0.00 |
| MARCH | $100.00 | $13,212,890.00 | $236,110.00 |
| APRIL | $140.00 | $59,720.00 | $482,790.00 |
| MAY | $0.00 | $1,725,620.00 | $11,920.00 |
| JUNE | $248,600.00 | $2,472,090.00 | $0.00 |
| JULY | $121,510.00 | $814,420.00 | $0.00 |
| AUGUST | $820,640.00 | $110.00 | $30,570.00 |
| SEPTEMBER | $116,300.00 | $47,140.00 | |
| OCTOBER | $383,890.00 | $7,069,170.00 | |
| NOVEMBER | $156,600.00 | $9,753,230.00 | |
| DECEMBER | $1,698,370.00 | $2,224,820.00 | |
| TOTALS | $3,568,100.00 | $75,578,370.00 | $761,390.00 |

*rounded to the nearest $10.00

22.     Between April 2020 through October 2021, CONSTANTIN used a portion of the

fraud funds that he profited from to purchase numerous assets valued at more than $6 million

including, real properties and vehicles, in addition to paying off an existing mortgage on his

current residence.  The following list details some of the asset purchases totaling approximately

$6,106,956.75 by CONSTANTIN during the above referenced time period:

| DATE | ASSET | ASSET TYPE | PURCHASE PRICE | REMARKS |
|---|---|---|---|---|
| 4/16/2020 - 6/3/2020 | 299 W. Pines Dr., | Loan Payoff | $493,728.50 | |
| 8/18/2020 | 2020 Lamborghini Urus | Vehicle | $277,151.51 | |
| 11/11/2020 | 2020 Mercedes Benz G63 | Vehicle | $232,126.44 | Paid $77,195.00 down payment |
| 1/14/2021 | Purchase 258 Pinerock Ln. | Real Property | $55,000.00 | |
| 3/18/2021 | 151 Bentwater Bay Dr. | Real Property | $170,000.00 | |
| 3/18/2021 | 142 Bentwater Bay Dr. | Real Property | $3,450,000.00 | |
| 3/19/2021 | 138 Bentwater Bay Dr. | Real Property | $655,000.00 | |
| 5/21/2021 | 2021 Lamborghini Urus | Vehicle | $51,364.74 | Traded-in 2020 Urus |
| 7/29/2021 | 2021 McLaren 720S Spider | Vehicle | $302,585.56 | Traded-in 2001 Ferrari |
| 10/15/2021 | 2020 Rolls Royce Wraith | Vehicle | $420,000.00 | |
| 1/18/2022 | 2018 Rolls Royce Dawn | Vehicle | $0.00 | Traded-in 2020 Rolls Royce Wraith |
| TOTAL | | | $6,106,956.75 | |

**A) CONSTANTIN INVESTMENT AND PERSONAL FINANCIAL ACCOUNTS**

*1. CONSTANTIN INVESTMENT (TD Ameritrade Account ending in 9349)*

23.      TD Ameritrade records reflect that on or about June 22, 2016, CONSTANTIN established TD Ameritrade Account #865-819349 (CONSTANTIN INVESTMENT). CONSTANTIN is the signor on the account.

24.      In January 2020, CONSTANTIN deposited $1,000.00 into CONSTANTIN INVESTMENT, and there apparently were no additional deposits into CONSTANTIN INVESTMENT through March 2022.   In contrast, during 2019 CONSTANTIN had deposited approximately $215,700.00 into CONSTANTIN INVESTMENT.     In April 2022, CONSTANTIN INVESTMENT was closed.

25.      As of January 1, 2020, the beginning investment value in CONSTANTIN INVESTMENT was $36,488.88 and on January 31, 2020, the ending investment value was $79,165.09.   An analysis of CONSTANTIN INVESTMENT revealed that the investment account values increased exponentially between 2020 through April 2022 when the account was closed.   The monthly investment trading activity typically increased dramatically as well during the time frame that CONSTANTIN was participating in the investment fraud scheme and depending on the amounts of withdrawal CONSTANTIN made during a particular month.

26.      One of numerous examples was observed between January 2021 through March 2021, when the investment value in CONSTANTIN INVESTMENT increased from $7,821,292.20 on January 1, 2021, to $30,299,400.14 on March 31, 2021.   During that three-month time period, CONSTANTIN disbursed funds totaling $8,150,000.00 from CONSTANTIN INVESTMENT to TARGET ACCOUNT 1.   The monthly reimbursements from CONSTANTIN INVESTMENT to TARGET ACCOUNT 1 between January 2020, and February 2022, are reflected as follows:

| YEAR | 2020 | 2021 | 2022 |
|---|---|---|---|
| JANUARY | $44,800.00 | $1,100,000.00 | $0.00 |
| FEBRUARY | $83,000.00 | $1,400,000.00 | $1,000,000.00 |
| MARCH | $455,000.00 | $5,650,000.00 | |
| APRIL | $275,000.00 | $200,000.00 | |
| MAY | $320,000.00 | $8,650,000.00 | |
| JUNE | $790,000.00 | $200,000.00 | |
| JULY | $400,000.00 | $0.00 | |
| AUGUST | $25,000.00 | $0.00 | |
| SEPTEMBER | $0.00 | $0.00 | |
| OCTOBER | $430,000.00 | $1,400,000.00 | |
| NOVEMBER | $450,000.00 | $500,000.00 | |
| DECEMBER | $590,000.00 | $200,000.00 | |
| **TOTAL** | **$3,862,800.00** | **$19,300,000.00** | **$1,000,000.00** |

27.     Between January 2020 through February 2022, CONSTANTIN transferred in excess of $24 million from CONSTANTIN INVESTMENT to fund a personal financial account (TARGET ACCOUNT 1) and an additional approximately $3.4 million to a personal account at JP Morgan Chase Bank Account (TARGET ACCOUNT 6).

28.     The sources of the funds in CONSTANTIN INVESTMENT were determined to be made up of profits earned through excessive securities trading activities while participating in the fraud scheme.

### 2.   TARGET ACCOUNT 1 (Capital One Account ending in 7878)

29.     Capital One Bank records reflect that TARGET ACCOUNT 1 (#156407878), titled Edward Constantin or B.A. was opened on or about February 26, 2012.  Edward Constantin and B.A. (spouse) are the only signors on the account.

30.     From on or about January 2020, through on or about April 2022, CONSTANTIN INVESTMENT sent approximately $24,162,800.00 to Target Acct. 1.  During the same time period, CONSTANTIN profited approximately $79 million from fraud proceeds derived from the scheme.

31.     On March 29, 2020, the beginning account balance in TARGET ACCOUNT 1 was $821.22.   Between March 29, 2020 through June 30, 2022, the total credits were

$24,524,122.04 of which 23,580,000.00 (96%) were from CONSTANTIN INVESTMENT. The other credits totaled $944,122.04 (4%).

32.    The other credits included $250,000.00 (1%) in transfers from TARGET ACCOUNT 5, $246,000.00 (1%) in transfers from TARGET ACCOUNT 4, $152,790.00 (.6%) from TARGET ACCOUNT 2, $92,934.21 (.4%) in refunds from title companies, $48,438.95 (.2%) from AmEx Travel Related Services, and $43,447.45 (.2%) from Fay Servicing (mortgage service), $43,000.00 (.2%) from J.H., and $38,729.37 (.2%) PayPal credits.  The remaining credits totaled $28,782.06 (.1%).

33.    Capital One Bank records reflect that CONSTANTIN and B.A. are the only signors on TARGET ACCOUNT 4 and TARGET ACCOUNT 5.  During the time period of the above referenced transfer credits from TARGET ACCOUNT 4 and TARGET ACCOUNT 5 to TARGET ACCOUNT 1, which totaled approximately 2%, in excess of 99% of the total credits to TARGET ACCOUNT 4 and TARGET ACCOUNT 5 originated in TARGET ACCOUNT 1.

34.    Therefore, an analysis of TARGET ACCOUNT 1 revealed that between March 29, 2020 through June 30, 2022, the total funds from CONSTANTIN INVESTMENT represented approximately 98% of the overall credits to TARGET ACCOUNT 1.  In addition, there were .6% ($152,790.00) in credits from TARGET ACCOUNT 2 which were also derived from fraud proceeds.

35.    A review of credits and debits between March 1, 2020 through June 30, 2022 to/from TARGET ACCOUNT 1 that were greater than or equal to $10,000 (and therefore

likely to constitute violations of Title 18, United States Code, Section 1957) to/from other CONSTANTIN accounts included the following:[1]

| Row Labels | Sum of Credits | Pmt Count | % | Payee/Payor Name/Category | Sum of Debits | PMT Count | % |
|---|---|---|---|---|---|---|---|
| TD Ameritrade | $23,977,000.00 | 92 | 97% | ACCT 0906 (E. Constantin/B. A.) | $746,000.00 | 9 | 52% |
| ACCT 0809 (E Constantin/B. A.) | $260,000.00 | 2 | 1% | ACCT 7619 (E Constantin or B. A.) | $499,000.00 | 3 | 35% |
| ACCT 0906 (E. Constantin/B. A.) | $246,000.00 | 3 | 1% | ACCT 0809 (E Constantin/B. A.) | $160,000.00 | 3 | 11% |
| Webull Financial | $150,000.00 | 3 | 1% | Webull Financial | $27,000.00 | 1 | 2% |
| **Grand Total** | **$24,633,000.00** | **100** | **100%** | **Grand Total** | **$1,432,000.00** | **16** | **100%** |

In short, the financial investigation determined that approximately 96% of the initial deposits into (and an additional approximately 2% of deposits returning to) TARGET ACCOUNT 1 were derived from fraud proceeds and therefore forfeitable.

### 3. TARGET ACCOUNT 2 (Webull Financial LLC Account ending in 3312)

36.     Webull Financial LLC records reflect that on or about October 27, 2018, CONSTANTIN established TARGET ACCOUNT 2. CONSTANTIN is the only signor on the account.

37.     As of January 1, 2020, the total equity holdings in TARGET ACCOUNT 2 were $515.55, and on January 31, 2020 the account balance was $83.66. A review of activity in TARGET ACCOUNT 2 during 2019 revealed very little trading activity. However, in April 2020 the trading activity began to substantially increase. On April 1, 2020, the opening balance was $68.28, and on April 30, 2020, the total equity holdings value was $1,008.86. On May 31, 2020, the balance increased to $9,456.57 and reached the hundred-thousand-dollar mark by October 31, 2020 ($195,084.64). In April 2021, CONSTANTIN sent four transfers totaling $152,790.00 from TARGET ACCOUNT 2 to TARGET ACCOUNT 1.

38.     The account balance of TARGET ACCOUNT 2 subsequently reached the $1 million mark in September 2021 ($1,302,762.09) and eclipsed the $2 million total equity

---

[1] In the table below, and other similar tables, "CATEGORY" or "Row Label" represents the payor/payee for a specific TARGET ACCOUNT, "CREDITS" represents the amount of money transferred in the aggregate from a payor, "DEBITS" represents the amount of money transferred in the aggregate to a payee, and "Pmt Count" represents the number of payments equal to or greater than $10,000 included in the credits or debits column.

holdings value in December 2021 ($2,696,707.94).  On June 30, 2022, the total equity holdings were $2,999,195.89.

39.     The sources of the funds in TARGET ACCOUNT 2 were determined to be made up of profits earned through excessive securities trading activity while participating in the fraud scheme.

### 4.   TARGET ACCOUNT 3 (Capital One Account ending in 7619)

40.     Capital One Bank records reflect that TARGET ACCOUNT 3 was opened on or about March 25, 2020.  Edward Constantin and B. A. are the only signors on the account.

41.     On March 25, 2020, the beginning balance in TARGET ACCOUNT 3 was $0.00. Between March 25, 2020 through June 30, 2022, the total credits to TARGET ACCOUNT 3 were $505,920.44 of which $500,000.00 (99%) were from TARGET ACCOUNT 1.   The credits from TARGET ACCOUNT 1 consisted of four deposits in the following amounts: $1,000.00,  $249,000.00,  $200,000.00,  and  $50,000.00. The  remaining  credits  totaled $5,920.44 (1%) and consisted of interest credits.

42.     The funds from TARGET ACCOUNT 1 accounted for approximately 99% of the proceeds that funded TARGET ACCOUNT 3.   An analysis of TARGET ACCOUNT 1 revealed that approximately 98% of the credits were from CONSTANTIN INVESTMENT which was utilized to further the fraud scheme.

### 5.   Target Account 4 (Capital One Account ending in 0906)

43.     Capital One Bank records reflect that Savings Account 36097420906, titled to Edward Constantin or B.A. (TARGET ACCOUNT 4 was opened on or about March 29, 2020. Edward Constantin and B.A. are the only signors on the account.

44.     On March 29, 2020, the beginning balance in TARGET ACCOUNT 4 was $0.00. Between March 29, 2020 through June 30, 2022, the total credits to TARGET ACCOUNT 4

were $752,137.55 of which $746,800.00 (99%) were from TARGET ACCOUNT 1. The credits from TARGET ACCOUNT 1 consisted of ten deposits in the following amounts: $800.00, $16,000.00, $40,000.00. $30,000.00, $10,000.00, $30,000.00, $70,000.00, $50,000.00, $400,000.00, and $100,000.00. The remaining credits totaled $5,337.55 (1%) and primarily consisted of interest payments totaling $5,237.58.

45. The funds from TARGET ACCOUNT 1 accounted for approximately 99% of the proceeds that funded TARGET ACCOUNT 4. An analysis of TARGET ACCOUNT 1 revealed that approximately 98% of the credits were from CONSTANTIN INVESTMENT which was utilized to further the fraud scheme.

### 6. TARGET ACCOUNT 5 (Capital One Account ending in 0809)

46. Capital One Bank records reflect that TARGET ACCOUNT 5 was opened on or about August 20, 2011. Edward Constantin and B.A. are the only signors on the account.

47. On March 2, 2020, the beginning balance in TARGET ACCOUNT 5 was $100.087.58. Between March 2, 2020 through December 1, 2020, the total credits to TARGET ACCOUNT 5 were $160,081.40 of which $160,000.00 (99.9%) were from TARGET ACCOUNT 1. The credits from TARGET ACCOUNT 1 consisted of three deposits in March 2020 in the following amounts: $20,000.00, $80,000.00, and $60,000.00. The remaining credits totaled $81.40 (.01%) and consisted of interest credits. In March 2020, there were two transfers from TARGET ACCOUNT 5 totaling $260,000.00 back to TARGET ACCOUNT 1.

48. The funds from TARGET ACCOUNT 1 accounted for approximately 99.9% of the proceeds that funded TARGET ACCOUNT 5 since, at least March 2, 2020. An analysis of TARGET ACCOUNT 1 revealed that approximately 98% of the credits were from CONSTANTIN INVESTMENT which was utilized to further the fraud scheme.

### 7. TARGET ACCOUNT 6 (JP Morgan Chase Accounting ending in 9420)

49.    JP Morgan Chase Bank records reflect that TARGET ACCOUNT 6 was opened on or about January 27, 2022.  Edward Constantinescu is the only signor on the account.

50.    From the date TARGET ACCOUNT 6 was opened on January 27, 2022, and through May 31, 2022, the total credits to TARGET ACCOUNT 6 were $3,446,651.87 of which $3,405,621.96 (99%) were from CONSTANTIN INVESTMENT.  The credits from CONSTANTIN INVESTMENT consisted of six deposits in the following amounts: $250,000.00, $1,000,000.00, $220,000.00. $551,000.00, $650,000.00, and $734,621.96.  The remaining credits of $41,029.91 (1%) included a check for $25,957.58 from McLaren Houston, and a check for $15,062.65 from Hallmark Specialty Insurance Co.

51.    An analysis of TARGET ACCOUNT 6 determined that approximately 99% of the credits were from CONSTANTIN INVESTMENT which was utilized to further the fraud scheme.

52.    A review of credits and debits between January 27, 2022 through May 31, 2022 to/from TARGET ACCOUNT 6 that were greater than or equal to $10,000 (and therefore likely to constitute violations of Title 18, United States Code, Section 1957) to/from other CONSTANTIN accounts included the following:[2]

| Category | Credits | Pmt Count | Category | Debits | Pmt Count |
|---|---|---|---|---|---|
| Edward Constantin | $ 2,201,000.00 | 3 | Morgan Stanley Private Bank | $ 400,000.00 | 4 |
| TD Ameritrade | $ 1,204,621.96 | 6 | **Grand Total** | **$ 400,000.00** | **4** |
| **Grand Total** | **$ 3,405,621.96** | **11** | | | |

B. **PURCHASES OF TARGET VEHICLES**

---

[2] In the table below, and other similar tables, "CATEGORY" or "Row Label" represents the payor/payee for a specific TARGET ACCOUNT, "CREDITS" represents the amount of money transferred in the aggregate from a payor, "DEBITS" represents the amount of money transferred in the aggregate to a payee, and "Pmt Count" represents the number of payments equal to or greater than $10,000 included in the credits or debits column.

53.    CONSTANTIN also utilized TARGET ACCOUNT 1 to purchase numerous vehicles and tracts of real property with the fraud proceeds.  Although the real properties are subject to forfeiture, the United States does not seek seizure of real property with this application.  Any seizure, restraint, or forfeiture of real property will be sought through other judicial process as part of a criminal or civil case filing.

### 1. TARGET VEHICLE 1 (2020 Mercedes Benz G63)

54.    On or about November 11, 2020, CONSTANTIN purchased a 2020 Mercedes Benz G63 (TARGET VEHICLE 1) from W.I. Simonson Mercedes, 1626 Wilshire Blvd., Santa Monica, CA 90403 ("W.I. Simonson").  The Retail Installment Contract dated on or about November 11, 2020, reflected that the purchase price was $232,126.44.  At the time of purchase CONSTANTIN paid $77,195.00 and financed the remaining amount due of $154,931.44.

55.    On or about November 5, 2020, CONSTANTIN purchased a Capital One Cashier's Check for $77,195.00 with funds withdrawn from TARGET ACCOUNT 1, payable to W.I. Simonson for the purchase of TARGET VEHICLE 1.

56.    As of February 1, 2023, Texas Department of Motor Vehicle records reflect that CONSTANTIN is the registered owner of TARGET VEHICLE 1.  The current registration record did not reflect a lien on the vehicle.

57.    On March 29, 2020, the beginning account balance in TARGET ACCOUNT 1 was $821.22.  Between March 29, 2020 through November 5, 2020, the total credits to TARGET ACCOUNT 1 were $2,796,377.78 of which $2,240,000.00 (80%) were from CONSTANTIN INVESTMENT.  The remaining credits totaled $556,377.78 (20%) which included $496,000.00 (18%) from TARGET ACCOUNT 4 or TARGET ACCOUNT 5 which, as referenced above, were funded over 99% each from TARGET ACCOUNT 1.  The other credits

totaling $60,377.78 (2%) mainly consisted of a refund of $43,447.45 from Fay Servicing (mortgage service), $10,000.00 from Ally Bank, and misc. payments and interest earned.

58.     Therefore, approximately 98% of the funds in TARGET ACCOUNT 1 at the time CONSTANTIN purchased the cashier's check on November 5, 2020 for $77,195.00 payable to W.I. Simonson are traceable to CONSTANTIN INVESTMENT in the purchase of TARGET VEHICLE 1.

### 2.   TARGET VEHICLE 2 (2021 Lamborghini Urus)

59.     On or about May 21,2021, CONSTANTIN purchased a 2021 Lamborghini Urus, (TARGET VEHICLE 2), and traded-in a 2020 Lamborghini Urus, VIN #ZPBUA1ZL7LLA10182, at Indigo Motorsports Texas, LLC aka Lamborghini Houston, 13921 North Freeway (I-45), Houston, TX 77090.  The Retail Purchase Agreement dated May 21, 2021 reflected a total purchase price of $286,364.74.  After receiving a trade-in credit of $235,000.00, and applying a down payment of $40,000.00, the amount owed for Target Vehicle 2 at the time of purchase was $11,364.74.

60.     On or about February 12, 2021, CONSTANTIN purchased a Capital One Cashier's Check for $20,000.00 payable to Lamborghini Houston with funds from TARGET ACCOUNT 1.  On or about May 13, 2021, CONSTANTIN paid $20,000.00 with an American Express card ending in 9006.  On May 14, 2021, there was a payment of $38,603.48 to American Express from TARGET ACCOUNT 1.  On or about May 26, 2021, there was a check (check #461) for $11,364.74 issued from TARGET ACCOUNT 1 payable to Lamborghini Houston (Post date June 1, 2021).

61.     As of February 1, 2023, Texas Department of Motor Vehicle records reflect that CONSTANTIN is the registered owner of TARGET VEHICLE 2.  The current registration record did not reflect a lien on the vehicle.

62.     On or about August 18, 2020, CONSTANTIN had previously purchased the 2020 Lamborghini Urus, VIN #ZPBUA1ZL7LLA10182, that CONSTANTIN traded-in on or about May 21, 2021 to purchase TARGET VEHICLE 2 and received a trade-in credit of $235,000.00. CONSTANTIN bought the 2020 Lamborghini Urus from the same dealership (Indigo Motorsports Texas, LLC aka Lamborghini Houston). The purchase price for the 2020 Lamborghini Urus was $277,151.51.

63.     On or about August 18, 2020, CONSTANTIN purchased a Capital One Cashier's Check for $271,401.33 from TARGET ACCOUNT 1 payable to Lamborghini Houston. On or about August 17, 2020, there was a $5,000.00 payment to Lamborghini Houston. On or about August 18, 2020, there was an American Express payment of $750.18.

64.     On March 29, 2020, the beginning account balance in TARGET ACCOUNT 1 was $821.22. Between March 29, 2020 through August 18, 2020, the total credits were $2,327,262.40 of which $1,785,000.00 (77%) were from CONSTANTIN INVESTMENT. The remaining credits totaled $542,262.40 (23%) which included $496,000.00 (21%) from TARGET ACCOUNT 4 or TARGET ACCOUNT 5 which, as referenced above, were funded over 99% each from TARGET ACCOUNT 1.

65.     The other credits totaling $46,262.40 (2%) mainly consisted of a refund of $43,447.45 from Fay Servicing (mortgage service), $2,622.51 payment from R. G., a refund and interest earned.

66.     Between March 29, 2020 through May 13, 2021, the total credits to TARGET ACCOUNT 1 were $20,946,811.72 of which $20,080,000.00 (96%) were from CONSTANTIN INVESTMENT. The remaining credits totaled $866,811.72 (4%) which included $496,000.00 (2%) from TARGET ACCOUNT 5 or TARGET ACCOUNT 4 which, as referenced above, were funded over 99% each from TARGET ACCOUNT 1. The other

credits totaled $370,811.72 (2%) and mainly consisted of $152,790.00 from TARGET ACCOUNT 2, $52,934.21 from title companies, $48,438.00 from AmEx Travel Services, $43,447.45 refund from Fay Servicing (mortgage service), $43,000.00 from J. H., $10,000.00 from Ally Bank, and misc. payments and interest earned.

67.     Therefore, in August 2020 when CONSTANTIN purchased the 2020 Lamborghini Urus, approximately 98% of the funds used to purchase the 2020 Lamborghini Urus are traceable to CONSTANTIN INVESTMENT.   Subsequently, in May 2021 when CONSTANTIN traded-in the 2020 Lamborghini Urus and purchased TARGET VEHICLE 2, CONSTANTIN charged $20,000.00 (paid from TARGET ACCOUNT 1) and provided a check for 11,364.74 issued from TARGET ACCOUNT 1.   As of May 13, 2021, approximately 98% the funds used to pay for Target Vehicle 2 are traceable to CONSTANTIN INVESTMENT.

### 3.   TARGET VEHICLE 3 (2018 Rolls Royce Dawn)

68.     On or about January 18, 2022, CONSTANTIN purchased a used black 2018 Rolls Royce Dawn (TARGET VEHICLE 3), and traded-in a 2020 Rolls Royce Wraith, VIN #SCAXZ0C03LU201895, from Indigo Motorsports Texas, LLC aka Lamborghini Houston aka Rolls-Royce Motor Cars North Houston, 13921 North Freeway (I-45), Houston, TX 77090.  The Retail Purchase Agreement dated January 18, 2022, listed a total selling price of $344,042.42, after receiving a trade-in allowance $370,000.00 for a 2020 Rolls Royce Wraith, and adding tax, title, and license fees, the amount owed to CONSTANTIN was $25,957.58. Lamborghini Houston records reflect that a check was issued on January 19, 2022 in the amount of $25,957.58 to CONSTANTIN which was subsequently deposited into TARGET ACCOUNT 6.

69.     As of February 1, 2023, Texas Department of Motor Vehicle records reflect that CONSTANTIN is the registered owner of TARGET VEHICLE 3.  The current registration record did not reflect a lien on the vehicle.

70.     On or about October 15, 2021, CONSTANTIN had purchased the 2020 Rolls Royce Wraith, VIN #SCAXZ0C03LU201895, from Indigo Motorsports Texas, LLC for a total selling price of $420,000.00.   On or about October 13, 2021, CONSTANTIN purchased a Capital One Cashier's Check for $250,000.00 from TARGET ACCOUNT 1 payable to Rolls Royce North Houston.  On or about October 15, 2021, there was a check (check #651) for $170,000.00 issued from TARGET ACCOUNT 1 (Post date October 28, 2021) payable to Rolls Royce North Houston.

71.     On March 29, 2020, the beginning account balance in TARGET ACCOUNT 1 was $821.22.  Between March 29, 2020 through October 15, 2021, the total credits were $22,396,730.95 of which $21,480,000.00 (96%) were from CONSTANTIN INVESTMENT. The remaining credits totaled $916,730.95 (4%) which included $496,000.00 (2%) from TARGET ACCOUNT 4 or TARGET ACCOUNT 5 which, as referenced above, were funded over 99% each from TARGET ACCOUNT 1.

72.     The other credits totaling $420,730.95 (2%) mainly consisted of $152,790.00 from TARGET ACCOUNT 2, $92,934.21 from title companies, $48,438.00 from AmEx Travel Services, $43,447.45 refund from Fay Servicing (mortgage service), $43,000.00 from J. H., $10,000.00 from Ally Bank, and misc. payments and interest earned.

73.     Therefore, in October 2021 when CONSTANTIN purchased the 2020 Rolls Royce Wraith, approximately 98% of the funds used to purchase the 2020 Lamborghini Urus are traceable to CONSTANTIN INVESTMENT.   Subsequently in January 2022, when CONSTANTIN traded-in the 2020 Rolls Royce Wraith and purchased TARGET VEHICLE

3, CONSTANTIN received a refund ($25,957.58) based on the trade-in value of the 2020 Rolls Royce Wraith that was deposited into TARGET ACCOUNT 6.

74.     Therefore approximately 98% of the funds used to purchase the 2020 Rolls Royce Wraith in October 2021, that was subsequently traded-in on January 18, 2022, to purchase TARGET VEHICLE 3, are traceable to CONSTANTIN INVESTMENT.

## VII.   CONCLUSION

75.     Based on the information contained in this Affidavit and Attachment A and Attachment B, incorporated by reference, there is probable cause to believe that all of the funds on deposit in the six (6) TARGET ACCOUNTS, and all three (3) TARGET VEHICLES, are subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) as "property, real or personal, involved in a transaction or attempted transaction in violation of sections 1956 (money laundering) and/or 1957 (spending statute) of this title, or any property traceable to such property," and/or subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) as property "that constitutes or is derived ... from proceeds traceable to the commission of the offense[s]" of wire fraud and securities fraud.

76.     The Affiant respectfully requests seizure warrants for the accounts and for the vehicles, pursuant to Sections 981(a)(1)(A) and/or 981(a)(1)(C) of Title 18 of the U.S. Code.

_Steven D. Dillon_

Subscribed to and sworn to telephonically on this 6th     day of March, 2023, and I find probable cause.

_Dena Palermo_

United States Magistrate Judge